# Exhibit A

*Filed and Attested by
PROTHONOTARY
19 JUN 2014 04:24 pm
K. EDWARDS*

**KATHLEEN G. KANE**
**ATTORNEY GENERAL**
By:  James A. Donahue, III
Executive Deputy Attorney General
PA Bar # 42624
jdonahue@attorneygeneral.gov
Office of Attorney General
Public Protection Division
14th Floor
Strawberry Square
Harrisburg, PA 17120
Tel:  (717) 787-4530

**JAMES D. SCHULTZ**
**GENERAL COUNSEL**
By:  Linda C. Barrett, Esquire
Senior Deputy General Counsel
Pa. Bar No. 46543
lbarrett@pa.gov
Governor's Office of General Counsel
333 Market Street, 17th Floor
Harrisburg, Pennsylvania  17101
Tel:  (717) 787-9347

**STARK & STARK, P.C.**
By:  Stephen A. Corr, Esquire
Special Counsel to the
Commonwealth of Pennsylvania
Pa. Bar No. 65266
scorr@stark-stark.com
777 Township Line Road, Suite 120
Yardley, PA  19067
Tel:  (267) 907-9600

### IN THE COURT OF COMMON PLEAS
### PHILADELPHIA COUNTY, PENNSYLVANIA

| | |
|---|---|
| THE COMMONWEALTH OF | ) |
| PENNSYLVANIA, by and through the | ) |
| PENNSYLVANIA ATTORNEY | ) |
| GENERAL, PENNSYLVANIA | ) |
| INSURANCE DEPARTMENT, and | ) |
| THE PENNSYLVANIA | ) |

UNDERGROUND STORAGE TANK ) 
INDEMNIFICATION FUND )
)
)
)
            Plaintiffs, )    **Civil Action No. _____**
)
v. )
)    **JURY TRIAL DEMANDED**
BP plc, BP HOLDINGS NORTH )
AMERICA LIMITED, BP AMERICA )
INC, BP PRODUCTS NORTH )
AMERICA INC., BP WEST COAST )
PRODUCTS LLC, and its predecessor )
companies and subsidiaries, )
ENERGY TRANSFER PARTNERS, LP, )
ETP HOLDCO CORPORATION, )
SUNOCO, INC., and its predecessor )
companies and subsidiaries, )
CHEVRON CORPORATION, )
CHEVRON USA INC., and its )
predecessor companies and subsidiaries )
CONOCOPHILLIPS, )
CONOCOPHILLIPS COMPANY, )
PHILLIPS 66, PHILLIPS 66 )
COMPANY, and its predecessor )
companies and subsidiaries, )
HESS CORPORATION, WILCO HESS )
LLC., and its predecessor companies and )
subsidiaries )
VALERO ENERGY CORPORATION, )
VALERO RETAIL HOLDINGS INC., )
CST SERVICES LLC, CST BRANDS )
INC., VALERO MARKETING and )
SUPPLY COMPANY, CST )
MARKETING and SUPPLY )
COMPANY, THE PREMCOR )
REFINING GROUP INC., PREMCOR )
INC., and its predecessor companies and )
subsidiaries )
KINDER MORGAN INC., EL PASO )
CORPORATION, EL PASO CGP )
COMPANY LLC and its predecessor )
companies and subsidiaries )
MARATHON OIL CORPORATION, )
MARATHON PETROLEUM )
CORPORATION, MARATHON )
PETROLEUM COMPANY LP, )
MARATHON PETROLEUM )
COMPANY LLC, SPEEDWAY LLC, )

Case ID: 140602880

and its predecessor companies and
subsidiaries,                                          )
                                                       )
SHELL OIL COMPANY, SHELL                               )
PETROLEUM INC., SHELL OIL                              )
PRODUCTS COMPANY LLC, and its                          )
predecessor companies and subsidiaries                 )
MOTIVA ENTERPRISES LLC, and its                        )
predecessor companies and subsidiaries                 )
                                                       )
                                                       )
                Defendants.                            )

|                    NOTICE                    |                    AVISO                    |
| --- | --- |

**NOTICE** / **AVISO**

You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint of for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you.

*You should take this paper to your lawyer at once. If you do not have a lawyer or cannot afford one, go to or telephone the office set orth below to find out where you can get legal help.*

PHILADELPHIA BAR ASSOCIATION
LAWYER REFERRAL AND
INFORMATION SERVICE
One Reading Center
Philadelphia, Pennsylvania 19107
Telephone: (215) 238-1701

Le han demandado a usted en la corte. Si usted quiere defenderse de estas demandas expuestas en las paginas siguientes, usted tiene veinte (20) dias de plazo al partir de la fecha de la demanda y la notificacion. Hace falta ascentar una comparencia escrita o en persona o con un abogado y entregar a la corte en forma escrita sus defensas o sus objeciones a las demandas en contra de su persona. Sea avisado que si usted no se defiende, la corte tomara medidas y puede continuar la demanda en contra suya sin previo aviso o notificacion. Ademas, la corte puede decidir a favor del demandante y requiere que usted cumpla con todas provisioner de esta demanda. Usted puede perder dinero o sus propiedades u otros derechos importantes pars usted.

*Lleve esta demanda a un abogado immediatamente. Si no tiene abogado o si no tiene el dinero suficiente de pagan tal servicio. Vaya en persona o name por*
*telefono a 7a oficina     cuya direccion se encuentra escrita abajo para averiguar donde se puede conseguir asistencia*

ASOCIACION DE LICENCIADOS DE
FILADELFIA
SERVICIO DE REFERENCIA
E INFORMACION LEGAL
One Reading Center
Filadelfia, Pennsylvania 19107
Telefono: (215) 238-1701

Case ID: 140602880

**KATHLEEN G. KANE**
**ATTORNEY GENERAL**
By:  James A. Donahue, III
Executive Deputy Attorney General
PA Bar # 42624
jdonahue@attorneygeneral.gov
Office of Attorney General
Public Protection Division
14th Floor
Strawberry Square
Harrisburg, PA 17120
Tel:  (717) 787-4530

**JAMES D. SCHULTZ**
**GENERAL COUNSEL**
By:  Linda C. Barrett, Esquire
Senior Deputy General Counsel
Pa. Bar No. 46543
lbarrett@pa.gov
Governor's Office of General Counsel
333 Market Street, 17th Floor
Harrisburg, Pennsylvania  17101
Tel:  (717) 787-9347

**STARK & STARK, P.C.**
By:  Stephen A. Corr, Esquire
Special Counsel to the
Commonwealth of Pennsylvania
Pa. Bar No. 65266
scorr@stark-stark.com
777 Township Line Road, Suite 120
Yardley, PA  19067
Tel:  (267) 907-9600

Case ID: 140602880

**IN THE COURT OF COMMON PLEAS**
**PHILADELPHIA COUNTY, PENNSYLVANIA**

| | | |
|---|---|---|
| THE COMMONWEALTH OF PENNSYLVANIA, by and through the PENNSYLVANIA ATTORNEY GENERAL, PENNSYLVANIA INSURANCE DEPARTMENT, and THE PENNSYLVANIA UNDERGROUND STORAGE TANK INDEMNIFICATION FUND | ) ) ) ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | **Civil Action No. _____** |
| v. | ) ) ) | **JURY TRIAL DEMANDED** |
| BP plc, BP HOLDINGS NORTH AMERICA LIMITED, BP AMERICA INC, BP PRODUCTS NORTH AMERICA INC., BP WEST COAST PRODUCTS LLC, and its predecessor companies and subsidiaries, ENERGY TRANSFER PARTNERS, LP, ETP HOLDCO CORPORATION, SUNOCO, INC., and its predecessor companies and subsidiaries, CHEVRON CORPORATION, CHEVRON USA INC., and its predecessor companies and subsidiaries CONOCOPHILLIPS, CONOCOPHILLIPS COMPANY, PHILLIPS 66, PHILLIPS 66 COMPANY, and its predecessor companies and subsidiaries, HESS CORPORATION, WILCO HESS LLC., and its predecessor companies and subsidiaries VALERO ENERGY CORPORATION, VALERO RETAIL HOLDINGS INC., CST SERVICES LLC, CST BRANDS INC., VALERO MARKETING and SUPPLY COMPANY, CST MARKETING and SUPPLY COMPANY, THE PREMCOR REFINING GROUP INC., PREMCOR | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |

Case ID: 140602880

INC., and its predecessor companies and                )
subsidiaries                                            )
KINDER MORGAN INC., EL PASO                             )
CORPORATION, EL PASO CGP                                )
COMPANY LLC and its predecessor                         )
companies and subsidiaries                              )
MARATHON OIL CORPORATION,                               )
MARATHON PETROLEUM                                      )
CORPORATION, MARATHON                                   )
PETROLEUM COMPANY LP,                                   )
MARATHON PETROLEUM                                      )
COMPANY LLC, SPEEDWAY LLC,                              )
and its predecessor companies and                       )
subsidiaries,                                           )
SHELL OIL COMPANY, SHELL                                )
PETROLEUM INC., SHELL OIL                               )
PRODUCTS COMPANY LLC, and its                           )
predecessor companies and subsidiaries                  )
MOTIVA ENTERPRISES LLC, and its                        )
predecessor companies and subsidiaries                  )
                                                        )
                                                        )
                     Defendants.                        )

## COMPLAINT

The Commonwealth of Pennsylvania, by and through the Attorney General, the

Pennsylvania  Insurance Department, and the Pennsylvania Underground Storage Tank

Indemnification Fund (referred to collectively as "Commonwealth" or "Pennsylvania") files this

Complaint against the above-named Defendants, including their predecessor companies and

subsidiaries (referred to collectively hereinafter as "Defendants"), and in support thereof states

and alleges the following:

## JURISDICTION

1.      This Court has jurisdiction over this action pursuant to 42 Pa.C.S.A. §

761(b) and § 931(a) as this is a civil action by the Commonwealth government.

Case ID: 140602880

## VENUE

2.      Venue is proper in this court pursuant to Pa.R.Civ.P. 2179.


## PARTIES

3.      The Commonwealth of Pennsylvania is a sovereign state of the United States of America.

4.      The Pennsylvania Insurance Department ("PID") was first established under the Act of Assembly of April 4, 1873, P.L. 20, and reorganized under the Insurance Department Act of May 17, 1921, P.L. 789. The PID is a department within the Executive Branch of the Commonwealth government.  The PID, through its Office of Liquidations, Rehabilitations and Special Funds, administers the claims and manages the revenue collection and investment activities for the Underground Storage Tank Indemnification Fund ("USTIF" or "Fund").

5.      The Pennsylvania Underground Storage Tank Indemnification Fund is  a special, restricted fund of the State Treasury that was created by the Storage Tank and Spill Prevention Act, 35 P.S. §§6021.101, *et seq.,* as amended, (sometimes hereinafter referred to as "Act") to assist owners and operators in meeting their financial responsibility requirement under the Act. The Pennsylvania Department of Environmental Protection (DEP) governs the construction, upgrade, and operation of underground storage tank systems (hereinafter referred to as "USTS") under regulations that are established under the Act.

6.      The USTIF makes claim payments for environmental remediation corrective action costs to eligible participants who are owners or operators of USTS for damages caused by a leak or release from their USTS. In order to participate in the USTIF, the owners and operators

Case ID: 140602880

of USTS must meet eligibility requirements including but not limited to the fact that the release must have occurred on or after February 1, 1994.

## **BP DEFENDANTS**

7.      Defendant BP plc is a corporation organized under the laws of England and Wales with its principal offices at One St. James Square in London, England. Defendant BP Holdings North America Limited is a corporation organized under the laws of England and Wales with its principal offices in England. In December 2006, Defendant BP plc transferred all of its stock, assets and holdings in Defendant BP America Inc to Defendant BP Holdings North America Limited. Defendant BP plc is the owner of all of the stock, assets and holdings of Defendant BP Holdings North America Limited.

8.      Defendant BP America Inc. is a corporation organized under the laws of the State of Delaware with its principal offices at 501 Westlake Park Boulevard in Houston, Texas 77079. Defendant BP America Inc owns and controls all of the stock, assets and holdings of BP's North American companies. Defendant BP plc is the parent corporation for Defendants BP Holdings North America Limited and BP America Inc.

9.      In 1987, BP plc acquired the former Standard Oil of Ohio (SOHIO) and made it the cornerstone of a new United States operation, BP America Inc. BP plc merged with Amoco Corporation (formerly Standard Oil of Indiana) in December 1998 becoming BP Amoco plc until 2000 when it was renamed BP plc.  In 1999, BP Amoco plc acquired the Atlantic Richfield Company (ARCO).

10.      Defendant BP Products North America Inc. is a Maryland corporation having its principal place of business in Illinois. BP Products North America Inc. is a subsidiary of BP America

Case ID: 140602880

Inc. that manages, owns and operates the refining and retail marketing assets of BP America Inc. in the United States. Defendant BP West Coast Products LLC is a subsidiary of BP Products North America Inc., which owns, operates and supplies the former ARCO (Atlantic Richfield Company) petroleum marketing facilities throughout the United States.

11.    Defendant BP plc and its wholly owned subsidiary, BP Holdings North America Limited, succeeded to the retail marketing assets and liabilities of BP America Inc., BP Products North America Inc., BP West Coast Products LLC, Standard Oil of Ohio (SOHIO), Standard Oil (Indiana), BP Amoco plc, Amoco Corporation, Amoco Oil Company and the Atlantic Richfield Company (ARCO) in the United States.

12.    As the result of the numerous mergers and acquisitions by BP in the United States, BP, through its U.S. subsidiaries, BP America Inc. and BP Products North America Inc., as well as its predecessor companies and subsidiaries, owned, operated, leased or supplied petroleum marketing facilities that distributed and sold petroleum fuels throughout the Commonwealth of Pennsylvania. Its Pennsylvania fuel stations were known historically by the BP, Boron, Gas N Go, Amoco, ARCO, Atlantic and American brands.

**ETP/SUNOCO DEFENDANTS**

13.    Defendant Energy Transfer Partners, L.P. is a publicly traded partnership owning and operating a diversified portfolio of energy companies. On October 5, 2012, Defendant Energy Transfer Partners, L.P. through its wholly owned subsidiary, Defendant ETP Holdco Corporation, a corporation organized under the laws of Delaware, merged with Defendant Sunoco, Inc.

Case ID: 140602880

14.     Defendant Sunoco, Inc. is a corporation organized under the laws of the Commonwealth of Pennsylvania with its principal offices at 1735 Market Street, Philadelphia, Pennsylvania 19103-7583. At all times material to this Complaint, Sunoco and its predecessor companies and subsidiaries transacted business in Pennsylvania based upon its ownership and/or operation of storage tank and petroleum-fuel dispensing facilities which distributed and sold petroleum fuels in Pennsylvania under the Sunoco, Sun, Atlantic, Stop 'n Go, A Plus, A-Mart, Coastal, Sunoco Food markets and Ultra Service Center Brands.

## CHEVRON DEFENDANTS

15.     Defendant Chevron Corporation is a corporation organized under the laws of the State of Delaware with its principal offices at 6001 Bollinger Canyon Road in San Ramon, California 94583.

16.     Defendant Chevron U.S.A., Inc. is a corporation organized under the laws of the Commonwealth of Pennsylvania   with its principal offices located at 6001 Bollinger Canyon Road, San Ramon, CA 94583.  Chevron USA, Inc. engages in the refining, retail marketing, and distribution of products derived from petroleum, other than natural gas liquids. Chevron U.S.A., Inc. operates as a subsidiary of Chevron Corp.

17.     Defendant Chevron Corporation originally was the Standard Oil Company of California (SOCAL) which was started in 1926.  In 1984, SOCAL changed its corporate name to Chevron Corporation.  In 1984, Chevron, in the biggest corporate merger ever to occur, purchased the Gulf Oil Company including its storage tank and petroleum fuel dispensing facilities throughout Pennsylvania.

Case ID: 140602880

18.    In 2001, Chevron merged with Texaco Inc. to form Chevron Texaco. The Chevron Texaco merger included Texaco's interests in Defendant Motiva Enterprises LLC a joint venture between Texaco and Shell Oil. On August 19, 2005, Chevron acquired the Unocal Corporation.

19.    Defendant Chevron Corporation is the parent corporation for the Defendant Chevron U.S.A., Inc. which operates Chevron's United States assets.  Defendant Chevron U.S.A., Inc. succeeded to the assets and liabilities of Texaco, Inc. in the United States.

20.    Defendant Chevron Corporation and its predecessor companies and subsidiaries known as Gulf Oil Company, Texaco Inc., Getty Oil, Unocal Corporation, Star Enterprises Inc. and Motiva Enterprises LLC owned, operated, leased, distributed or supplied service stations and convenience stores throughout Pennsylvania.

## CONOCOPHILLIPS/PHILLIPS 66 DEFENDANTS

21.    Defendant ConocoPhillips is a corporation organized under the laws of the State of Delaware formed on November 16, 2001 with its principal offices in Houston, Texas. Defendant ConocoPhillips is the successor company following the merger of Conoco Inc. and Phillips Petroleum Company, which was completed in 2002. Defendant ConocoPhillips Company is a subsidiary of ConocoPhillips that formerly owned, operated, leased, distributed or supplied storage tank and petroleum fuel dispensing facilities primarily service stations and convenience stores using the brand names Phillips 66, Conoco, 76, Circle K, Kicks 66, Jet, Western, Husky, DS, Zephyr, Flying J and Kayo.

22.    Defendant Phillips 66 is a corporation organized under the laws of the State of Delaware formed on November 10, 2011 with its principal offices in Houston, Texas.

Case ID: 140602880

Defendants Phillips 66 Company is a subsidiary of Phillips 66 that directly owns, operates, leases, distributes or supplies storage tank and petroleum fuel dispensing facilities primarily service stations and convenience stores. On April 30, 2012, Defendant ConocoPhillips divided its corporation into two distinct entities. The downstream petroleum businesses of ConocoPhillips became part of the newly formed Phillips 66. At that time the ownership and operation of the downstream petroleum marketing business of the ConocoPhillips Company was transferred to the Phillips 66 Company which was a newly formed subsidiary of Phillips 66.

23.     Defendants ConocoPhillips and Phillips 66 are the successors-in-interest to a number of companies and subsidiaries that transacted business in Pennsylvania based upon their ownership, operation, leasing, distribution or supplying of storage tank and petroleum-fuel dispensing facilities which distributed and sold petroleum fuels in Pennsylvania including but not limited to Phillips Petroleum Company, Conoco, Inc., Tosco Corporation, The Circle K Corporation ("Circle K"), and their various predecessors and subsidiaries.

**HESS DEFENDANTS**

24.     Defendant Hess Corporation is a Delaware corporation with its principal place of business in New York City. Prior to December 2006, Defendant was known as the Amerada Hess Corporation.

25.     Defendant Hess Corporation and its predecessor companies and subsidiaries including its former joint venture Wilco Hess LLC owned, operated, leased, distributed or supplied service stations and convenience stores throughout Pennsylvania using primarily the Hess and Wilco brands.

Case ID: 140602880

## VALERO/CST BRANDS DEFENDANTS

26.   Defendant Valero Energy Corporation is a corporation organized under the laws of the State of Delaware with its principal offices at One Valero Way in San Antonio, Texas 78249. Valero marketed petroleum fuel products via more than 4,700 retail petroleum fuel dispensing facilities branded as Valero, Diamond Shamrock, Ultramar, Beacon, Corner Store, Stop N Go, Clark and Total until May 13, 2013 when it transferred its retail marketing businesses to Defendant CST Brands Inc.

27.   Defendant Valero Retail Holdings Inc. is a Delaware corporation having its principal place of business in San Antonio, Texas.  Valero Retail Holdings Inc. owns and operates branded convenience store outlets that store and sell petroleum products throughout the United States.  Valero Retail Holdings Inc. was formerly the Diamond Shamrock Refining & Marketing Company (DSRMC). In 2013, Valero Retail Holdings Inc. was converted from a corporation to a limited liability company named CST Services LLC.

28.   Defendant CST Brands Inc. is a Delaware corporation having its principal place of business in San Antonio, Texas. On May 1, 2013, Valero Energy Corporation completed its separation of its retail marketing convenience store business into a newly formed publicly traded company; CST Brands Inc. Defendant Valero Energy Corporation transferred all retail service station and convenience store operations to Defendant CST Brands Inc. and its subsidiaries.

29.   Defendant Valero Marketing and Supply Company is a Delaware corporation having its principal place of business in San Antonio, Texas.  Valero Marketing and Supply Company supplies petroleum fuels under trademark, licensing and franchise agreements to branded dealers and jobbers throughout the United States.

Case ID: 140602880

30.     Defendant CST Marketing and Supply Company is a Delaware corporation having its principal place of business in San Antonio, Texas. On May 1, 2013, a Branded Distributor Marketing Agreement and a Petroleum Product Sale Agreement were entered between Valero Marketing and Supply Company and CST Marketing and Supply Company (which is a subsidiary of CST Brands Inc.) for the marketing and supply of petroleum fuels to Valero branded petroleum fuel dispensing facilities.

31.     Defendant The Premcor Refining Group Inc. is a Delaware corporation having its principal place of business in San Antonio, Texas. Defendant The Premcor Refining Group Inc. is a subsidiary of Premcor Inc.

32.     Defendants Valero Energy Corporation and CST Brands Inc succeeded to the retail marketing assets and liabilities including but limited to Ultramar Diamond Shamrock Corporation, Ultramar Inc., Total Petroleum Inc., TPI Petroleum, Inc., Clark USA, Inc., Clark Refining & Marketing, Inc., Clark Refining Holdings Inc., Premcor Inc., Premcor USA Inc., and The Premcor Refining Group Inc., in Pennsylvania.

## KINDER MORGAN/COASTAL DEFENDANTS

33.     Defendant Kinder Morgan Inc. is a corporation organized under the laws of the State of Delaware with its principal offices at 500 Dallas Street, Suite 1000 in Houston, Texas 77002. Defendant Kinder Morgan Inc. was incorporated on August 23, 2006 in the State of Delaware.

34.     Defendant Kinder Morgan Inc. (KMI) is the largest midstream and the third largest energy company in North America with a combined enterprise value of approximately $100 billion.

Case ID: 140602880

35.     Defendant Kinder Morgan Inc. is the successor corporation to Defendants El Paso Corporation and El Paso CGP Company LLC resulting from a merger that was completed on May 25, 2012. As the result of this merger, Defendant Kinder Morgan Inc. was the successor corporation to El Paso Corporation and El Paso CGP Company LLC and its predecessor companies and subsidiaries including but not limited to Coastal Corporation, Coastal Holding Corporation, CIC Industries Inc., Coastal Refining & Marketing Inc., Coastal Fuels Marketing Inc., Coastal Mart Inc., Derby Refining Co., Union Petroleum Corporation, Belcher Oil Company, Pester Marketing Company, and Coastal Branded Marketing, Inc.

## <u>MARATHON DEFENDANTS</u>

36.     Defendant Marathon Oil Corporation is a corporation organized under the laws of the State of Delaware with its principal offices at 5555 San Felipe Road, Houston, Texas 77056-2723. Defendant Marathon Oil Company is an Ohio corporation and a wholly owned subsidiary of Defendant Marathon Oil Corporation with its principle place of business at 5555 San Felipe Road, Houston, Texas 77056-2723.

37.     Defendant Marathon Petroleum Corporation is a corporation organized under the laws of the State of Delaware with its principal offices at 539 South Main Street, Findlay, Ohio 45840.

38.     Defendant Marathon Petroleum LP is a limited partnership organized under the laws of the State of Delaware with its principal offices at 539 South Main Street, Findlay, Ohio 45840. Defendant Marathon Petroleum LP is a wholly owned subsidiary of Defendant Marathon Petroleum Corporation. Defendant Marathon Petroleum LP controls the downstream refining, transportation and marketing assets of Defendant Marathon Petroleum Corporation.

Case ID: 140602880

Defendant Marathon Petroleum Company LLC, with its principal place of business at 539 South Main Street, Findlay, Ohio 45840, was formed effective September 1, 2005 upon the completion of the purchase of Ashland Inc. 38% interest in the refining, transportation and marketing assets of Defendant Marathon Ashland Petroleum LLC. Defendant Marathon Petroleum Company LLC is a subsidiary of Defendant Marathon Petroleum LP.

39.     On January 13, 2011, Defendant Marathon Oil Corporation announces that its will split into two separate owned and traded corporate entities. Defendant Marathon Oil Corporation would encompass the worldwide upstream exploration and production assets. Defendant Marathon Petroleum Corporation would contain all the downstream refining, transportation and marketing current assets which would include Defendant Marathon Petroleum LP, Defendant Marathon Petroleum Company LLC and Defendant Speedway LLC. This split involving Defendant Marathon Oil Corporation and Defendant Marathon Petroleum Corporation became effective July 1, 2011.

40.     At all times material to this Complaint, the Marathon Defendants transacted business in Pennsylvania based upon its ownership, operation, leasing, distribution or supply of petroleum fuel dispensing facilities that distributed and sold petroleum fuels throughout the Commonwealth of Pennsylvania.

## SHELL OIL/MOTIVA DEFENDANTS

41.     Defendants Shell Oil Company is a corporation organized under the laws of the State of Delaware on February 8, 1922 with its principal offices at One Shell Plaza, Houston, Texas 77002.

Case ID: 140602880

42.     Defendant Shell Oil Company is wholly owned by Defendant Shell
Petroleum Inc., a Delaware corporation which is a subsidiary of the Royal Dutch/Shell Group of
Companies.

43.     On January 19, 1995, Defendant Shell Oil Products Company LLC is
formed as a limited liability company in the State of Delaware. Shell Oil Products Company
LLC refines, markets, and distributes crude oil and petroleum products. The company is based in
Houston, Texas. Shell Oil Products Company LLC operates as a subsidiary of Shell Oil
Company.

44.     In 1998, Shell Oil restructured its previously wholly owned downstream
assets in the oil products business into two new joint ventures, Equilon Enterprises LLC
("Equilon") and Motiva Enterprises LLC ("Motiva").

45.     In 1988 Texaco and Saudi Refining agreed to form a joint venture known as
Star Enterprise in which Saudi Refining would own a 50 percent share of Texaco's refining and
marketing operations in the eastern United States and Gulf Coast. The Star Enterprise operation
and Shell's eastern and southeastern operations were merged into a company called Defendant
Motiva Enterprises LLC.

46.     After Texaco merged with Chevron in 2001, Shell and Saudi Refining
purchased Texaco's interests in the joint venture, Motiva Enterprises LLC., with each company
owning a 50% interest.

47.     Defendant Motiva Enterprises LLC was formed in 1998 in the State of
Delaware and began operations in July 1998 in the Commonwealth of Pennsylvania under the
Shell and Texaco brands. Currently, Defendant Motiva Enterprises LLC owns, operates, leases,

Case ID: 140602880

distributes and supplies petroleum fuels to service stations and convenience stores throughout Pennsylvania using the Shell brand.

## PENNSYLVANIA USTIF

48.     USTS, like the ones Defendants have operated and continue to operate in the Commonwealth of Pennsylvania, leak petroleum fuels and contaminate nearby soil and seep into groundwater and thus constitute a hazardous undertaking necessitating public concern.

49.     Recognizing the serious risks posed by leaking USTS, the Pennsylvania General Assembly created the USTIF to ensure that leaking storage tank and petroleum fuel dispensing facilities, primarily service stations and convenience stores are identified and cleaned up. The Act and 25 Pa Code Chapter 977.

50.     Pennsylvania has a strong public-policy interest in the identification, handling, rehabilitation, and other such expeditious remediation of sites contaminated by petroleum caused by leaking USTS.

51.     Pennsylvania has a strong public-policy interest in preserving the USTIF and in ensuring its appropriate and proper use so the USTIF remains financially sound; in fact the statute contains express directives regarding maintenance and management of the Fund in order to effectuate the overriding public interest.

52.     Under the Act, the Commonwealth of Pennsylvania promulgated regulations relating to the installation, construction, modification, operation and removal of USTS at storage tank facilities.

53.     In regard to releases and leaks from USTS at storage tank and petroleum fuel dispensing facilities, there are regulations relating to the following:

Case ID: 140602880

(a)      The investigation of suspected releases from USTS at storage tank facilities (25 Pa Code § 245.304);

(b)      The reporting of suspected releases from USTS at storage tank facilities (25 Pa Code § 245.305);

(c)      The conduction of interim remedial activities from USTS at storage tank facilities (25 Pa Code § 245.306);

(d)      The conduction and implementation of remedial action plans for USTS at storage tank facilities (25 Pa Code § 245.312); and

(e)      The corrective action process for owners, operators and responsible persons for USTS at storage tank facilities (25 Pa Code § 245.303).

54.   Under the Act, it is presumed, as a rebuttable presumption of law, in civil and administrative proceedings that a person who owns or operates a USTS is liable, without proof of fault, negligence or causation, for damage, contamination or pollution within 2,500 feet of the perimeter of the site of a storage tank containing or which contained a regulated substance of the type which caused the damage, contamination or pollution (25 Pa Code § 245.303). As a result, owners and operators of USTS that have experienced leaks and releases are strictly liable for damage, contamination and pollution at their storage tank and petroleum fuel dispensing facilities.

55.   Under the Act, the owners of USTS at storage tank and petroleum fuel dispensing facilities are required to participate in the USTIF (25 Pa Code § 245.704).

Case ID: 140602880

56.     Pursuant to authority granted to it under the Act, USTIF promulgated regulations found at 25 Pa Code §§ 977.1 *et seq*. to carry out its vitally important public-policy initiative, to remediate expeditiously petroleum-related contamination from, *inter alia*, leaking USTS at storage tank and petroleum fuel dispensing facilities in order to protect the public health, safety, and welfare and to minimize environmental damage.

57.     The Pennsylvania General Assembly and the USTIF set forth the eligibility requirements for USTIF disbursements. 35 P. S. § 6021.706 and 25 Pa Code § 977.31 et seq.

58.     The USTIF has received applications from the Defendants as participants in the Fund for reimbursement of environmental remediation corrective action costs for damage, contamination and pollution at Defendants storage tank and petroleum fuel dispensing facilities including service stations and/or convenience stores in the Commonwealth of Pennsylvania.

59.     In addition, following Defendants' divestiture of facilities in Pennsylvania, the USTIF has received applications from subsequent owners (at times referred to herein as "third party participants") of Defendants' facilities in Pennsylvania for reimbursement of environmental remediation corrective action costs for damage, contamination and pollution at storage tank and petroleum fuel dispensing facilities that occurred when the Defendants owned, operated, leased, distributed or supplied these facilities.

60.     The USTIF also established exclusions and conditions that would preclude disbursements from the Fund. See 25 Pa Code § 977.32, 25 Pa Code § 977.33 and 25 Pa Code § 977.34 et seq.

61.     The USTIF allows for statutory subrogation. 25 Pa Code § 977.40 states:

"§ 977.40. Subrogation for corrective action cost.

Case ID: 140602880

(a) The Fund, after any payment, shall be subrogated to all of the
rights of recovery of an owner or operator against any person for
the costs of remediation.

(b) If an owner or operator does not comply with § 977.32 (relating
to participant cooperation), the Fund may deny further payments
on a claim.

## BACKGROUND ALLEGATIONS

62.   Defendants are financially sound companies which have been in the
business of owning, operating, leasing, distributing or supplying service stations and
convenience stores through their predecessor companies and subsidiaries throughout the
Commonwealth of Pennsylvania.

63.   Defendants' storage tank and petroleum fuel dispensing facilities including
service stations and convenience stores distribute and sell petroleum fuel products from USTS
which are defined as "any one or a combination of tanks (including underground pipes connected
thereto) which are used to contain an accumulation of regulated substances, and the volume of
which (including the volume of underground pipes connected thereto) is 10% or more beneath
the surface of the ground." 25 Pa Code § 977.4.

64.   Through the course of their profitable commercial operations, Defendants
have contaminated multiple storage tank and petroleum fuel dispensing facilities and multiple
surrounding properties throughout the Commonwealth of Pennsylvania, including properties in
Philadelphia, by utilizing outdated, poorly maintained and inadequate USTS which spill, leak,
and otherwise discharge petroleum fuels into the environment.

Case ID: 140602880

65.     USTS which spill, leak and otherwise discharge petroleum damage the environment by, *inter alia*, contaminating soils, subsurface soils, groundwater and surface water. Such damage and contamination pose a significant threat to the environment and the health, safety, and welfare of the public.

66.     Defendants' use of inadequate, poorly maintained and outdated  USTS significantly polluted Pennsylvania's groundwater and environment.

67.     A large number of Defendants' storage tank and petroleum fuel dispensing facilities, primarily service stations and convenience stores, had USTS that were extremely old (many over 20 years of age) lacking corrosion protection systems, leak detection systems, overfill protection systems, dispenser pans, and proper inventory control. Without many of the available leak prevention systems as part of their USTS, it is reasonable to believe that USTS leaked at many of their service stations and convenience stores some time prior to February 1, 1994.

68.     Defendants would be excluded under the Act as a Fund participant from asserting any claims against USTIF for payment and/or reimbursement for corrective actions costs relating to any portion of a release from USTS which occurred before February 1, 1994.

69.     When storage tank and petroleum fuel dispensing facilities have experienced multiple releases both before and after February 1, 1994, the USTIF attempts to prorate the reimbursement for corrective action costs to exclude reimbursement for pre-February 1, 1994 contamination.

70.     A significant number of the claims made to the USTIF by Defendants suppressed, omitted, concealed, mislead, falsified, misrepresented and failed to disclose to the

Case ID: 140602880

USTIF any and all information about leaks and releases that were discovered and occurred prior to February 1, 1994.

71.    Defendants' actions, inactions, omissions, concealment, suppression, falsification, misrepresentations and fraudulent conduct concerning their history of pre- February 1, 1994 leaks and/or releases mislead and obstructed the USTIF. These acts or omissions of a false, fraudulent, or misleading nature were undertaken in furtherance of obtaining funding/reimbursement in violation of the rules and regulations of the USTIF.

72.    Defendants collected for their own pollution at storage tank and petroleum fuel dispensing facilities from many of their insurers and had pollution liability coverage through commercial, mutual and captive insurers.

73.    Despite having insurance for their pollution liabilities, Defendants made application to the USTIF and let the USTIF pay for the environmental corrective action costs at many of their contaminated storage tank and petroleum fuel dispensing facilities without ever disclosing to the Commonwealth the existence of their commercial, mutual and captive insurance.

74.    Even after Defendants reached private and litigated settlement agreements with many of their insurance carriers which included claims on their policies for contaminated storage tank and petroleum fuel dispensing facilities located in the Commonwealth of Pennsylvania, including sites in Philadelphia, Defendants made claims to the USTIF for the same contaminated sites in Pennsylvania and collected reimbursements from the USTIF.

75.    Defendants had a duty to disclose to the Commonwealth the existence of any potentially applicable insurance coverage and to reimburse the USTIF any insurance monies received for environmental corrective action costs for which the USTIF also paid.  However,

Case ID: 140602880

Defendants failed to advise the Commonwealth, at any time, of their insurance policies or reimburse the USTIF after collecting their own insurance coverage settlement proceeds.

76.    Defendants have accessed and depleted the USTIF of vitally important public-benefit funds through their actions, inactions, omissions, concealment, bad faith, deceptive, and fraudulent conduct in their applications to the USTIF.

77.    Pennsylvania has a continuing interest and obligation to remediate petroleum-contaminated sites, to protect the Commonwealth by ensuring that the USTIF is accessed and used in a just and proper manner which is consistent with its public policy and purpose.

78.    The Commonwealth brings this action under its Constitutional and statutory authority, as well as under principles of equity and common law to protect important public-policy concerns, and the health, safety and general welfare of the Commonwealth for the following purposes:

(a)    To recover all money paid to Defendants, or their third-party contractors and agents, by the USTIF for the costs associated with the environmental remediation of leaking USTS at storage tank and petroleum fuel dispensing facilities in Pennsylvania for which Defendants had, or could have had, commercial, mutual or captive insurance coverage;

(b)    To obtain reimbursement of all money paid to Defendants by their insurers, commercial, mutual or captive, for the costs associated with the environmental remediation of leaking

Case ID: 140602880

USTS at storage tank and petroleum fuel dispensing facilities in Pennsylvania;

(c)     To obtain reimbursement of all money paid to subsequent owners of Defendants' storage tank and petroleum fuel dispensing facilities in Pennsylvania by the USTIF for costs associated with the environmental remediation of leaking USTS which were, or could have been, covered by Defendants' insurance policies;

(d)     To recover all money Plaintiffs would have been able to recover through subrogation pursuant to 25 Pa. Code § 977.40 but for Defendants' insurance reimbursements and release of their insurance policies;

(e)     To recover all reimbursements for corrective action costs for pre February 1, 1994 leaks and releases based upon Defendants' omission, concealment, misrepresentation, falsification and failure to disclose making Defendants' ineligible for the Fund under 25 Pa. Code § 977.33;

(f)     To recover all reimbursements for corrective action costs incurred by third party participants who purchased and leased Defendants' former storage tank and petroleum fuel dispensing facilities where pre February 1, 1994 leaks and releases occurred during Defendants' ownership which Defendants' concealed, omitted, falsified and failed to disclose;

Case ID: 140602880

(g)     To recover all reimbursements for corrective action

costs incurred by third party participants for any property damage,

contamination and pollution related to pre February 1, 1994 leaks

and releases occurred during Defendants' ownership under 25 Pa.

Code § 245.303; and

(h)     To seek all other appropriate relief available at law

or equity under the circumstances.

79.   The allegations "based upon information and belief" contained herein are

based on information now available to the Commonwealth.  Further information regarding the

conduct of the Defendants will be sought by Commonwealth through discovery.


## DEFENDANTS' WRONGFUL CONDUCT

80.   Defendants owned, operated, leased and/or supplied storage tank and

petroleum fuel dispensing facilities primarily service stations and convenience stores in the

Commonwealth of Pennsylvania.

81.   During the 1950's and 1960's, Major Oil Companies including Defendants'

predecessors rapidly expanded and built thousands of new service stations throughout the U.S.

including the Commonwealth of Pennsylvania. Virtually all of the new USTS were unprotected

steel tanks and pipes that were installed without proper testing for corrosive soils (i.e. high

moisture and low pH). In 1941, the N.F.P.A. published a report on "Leakage from Underground

Gasoline Tanks" in which it concluded that tank leakage to a large extent was due to the

corrosive actions of soils. Notwithstanding this information, Defendants' predecessors failed to

test soils at their Pennsylvania facilities for corrosion and also failed to install Steel USTS with

Case ID: 140602880

corrosion protection. In a leak rate study from 1965 involving a group of 800 tanks in Ohio, the report indicated that there was at least one tank failure in 55% of the stations within 15 years primarily due to soil corrosion.

82.   In 1978, American Petroleum Institute (API) conducted a study of USTS leaks. The study concluded that the majority of leaks (54%) occurred in USTS 11 to 15 years old. About 16% of the leaks occurred in tanks 6 to 10 years old. In 1979, the Petroleum Equipment Institute's ("PEI")"Tulsa Letter" stated that a top level engineer from a Major Oil Company told the PEI that the industry is headed for a catastrophe in underground tank system leaks in the next five years.

83.   In an API tank leakage meeting in 1982, a tank leakage panel made up of representatives of Oil Companies concluded that many tanks installed in the 1950's and 1960's are ready to give out. In 1982 at a SIGMA (Society of Independent Gasoline Marketers) conference, underground storage tank system leaks were likened to an "industrial cancer."

84.   With the knowledge of pending disaster from underground storage tank system leaks from Oil Industry studies, Defendants did nothing but simply remove this industrial cancer by divesting itself of many of their storage tank and petroleum fuel dispensing facilities primarily service stations and convenience stores in Pennsylvania.

85.   In 1986, the EPA published a report entitled, "Summary of State Reports on Release from Underground Storage Tanks." The EPA report concluded that the mean age for underground storage tank system failure was 17 years in Pennsylvania.

86.   Under Pennsylvania law, Defendants are the responsible parties for all leaks or releases from the USTS during the time that they owned, operated, leased, distributed or supplied their storage tank and petroleum fuel dispensing facilities.

Case ID: 140602880

87.     Starting in 1988, Defendants became aware of new federal and state regulations that required substantial upgrades and replacement to USTS at their storage tank and petroleum fuel dispensing facilities throughout the United States including Pennsylvania. These upgrades would have required hundreds of millions of dollars in expenditures for USTS upgrades and replacement by December 22, 1998.

88.     Upon information and belief, Defendants began divestiture programs of their storage tank and petroleum fuel dispensing facilities in the Commonwealth of Pennsylvania in order to avoid costly expenditures for USTS upgrades and replacement. Part of Defendants' divestiture strategy was to avoid environmental liability for leaking USTS at their storage tank and petroleum fuel dispensing facilities in the Commonwealth of Pennsylvania.

89.     In order to effectuate their divestiture strategies, Defendants' began to sell their storage tank and petroleum fuel dispensing facilities, transfer leases, sell and/or lease USTS to third parties as well as their branded dealers and/or jobbers.

90.     In many cases, Defendants were required to use financial lending subsidiaries to assist in the divestiture program. Defendants' financial lending subsidiaries were used because Defendants' buyers would not have been able to obtain bank financing for contaminated storage tank and petroleum fuel dispensing facilities because of banking/lending requirements for environmental site assessments. Defendants did not want the prospective buyer, their prospective banker/lender or the Commonwealth of Pennsylvania to know about the severity of the environmental contamination that existed at their proposed divested storage tank and petroleum fuel dispensing facilities. Defendants' financial lending subsidiaries became the mortgage holder for the divested properties.

Case ID: 140602880

91.     As part of their divestiture strategies related to financing, Defendants sold their storage tank and petroleum fuel dispensing facilities to third parties primarily under long term petroleum supply and branding contracts without the need for environmental site assessments.

92.     The sales and lease purchase contracts as part of Defendants' divestiture programs were on an "As Is" basis. Defendants chose to conceal, mislead, misrepresent, suppress and not reveal any information or provide any documentation to any prospective purchaser regarding any known property damage, contamination and/or pollution at their storage tank and petroleum fuel dispensing facilities. Only in limited circumstances did the Defendants' agree to indemnify the prospective buyer for any damage, contamination and pollution that existed at their former storage tank and petroleum fuel dispensing facilities.

93.     By their divestiture programs, Defendants saved hundreds of millions of dollars in environmental remediation expenses and expenses for upgrading their former storage tank and petroleum fuel dispensing facilities including service stations and convenience stores  in the Commonwealth of Pennsylvania.

94.     From 1940's to the present, many independent commercial insurance companies issued multiple insurance policies to Defendants, including garage-liability policies, comprehensive general-liability policies, property-damage policies, all-risk policies, pollution-liability policies and excess-insurance policies.

95.     In addition, mutual and wholly owned captive insurers issued multiple insurance policies to Defendants that provided coverage for the investigation and remediation of environmental contamination caused by leaking USTS at Defendants' service stations and convenience stores.

Case ID: 140602880

96.   At all times relevant hereto, Defendants maintained, when dealing with their insurance carriers, that their commercial insurance, primarily garage-liability policies, comprehensive general-liability policies, property-damage policies, all-risk policies, pollution-liability policies and excess-insurance policies provided insurance coverage for the investigation and remediation of environmental contamination at storage tank and petroleum fuel dispensing facilities.

97.   At all times relevant hereto, Defendants maintained, when dealing with their insurance carriers, that their mutual and captive insurers provided insurance coverage for the investigation and remediation of environmental contamination at their storage tank and petroleum fuel dispensing facilities.

98.   Defendants knew that third-party dealers, lessees and/or jobber operators had a contractual obligation under franchise agreements and contracts to purchase and maintain insurance to cover third-party dealer, lessees and/or jobber operators, along with Defendants, as additional insureds, for corrective action environmental remediation costs for service stations and convenience stores in Pennsylvania.

99.   Defendants initiated private claims and legal proceedings to enforce their rights under thousands of insurance policies for reimbursement of corrective action costs for environmental clean-up of leaking USTS for their marketing system involving tens of thousands of storage tank and petroleum fuel dispensing facilities that were formerly and currently owned, operated, leased or supplied throughout the United States including the Commonwealth of Pennsylvania.

100.  In many instances, Defendants filed insurance coverage litigation naming insurance companies as defendants and seeking recovery under numerous insurance policies for

Case ID: 140602880

certain environmental matters of Defendants arising from the ownership and operation of their petroleum fuel businesses.

101.  Defendants in these lawsuits sought to hold their insurers responsible for paying for the investigation and remediation of environmental contamination caused by leaking USTS throughout their historic marketing system in the United States, including the Commonwealth of Pennsylvania.

102.  Defendants entered into comprehensive settlements with many of their insurers in the insurance coverage lawsuits as well as insurance reimbursements from private claims that resulted in Defendants collectively receiving in excess of a billion dollars.

103.  Defendants have made no effort to disclose to the Commonwealth the scope and terms of their insurance reimbursements and settlement agreements with many of their various insurers.

104.  Moreover, Defendants have made no effort to repay or reimburse the Commonwealth for the disbursements they received from the USTIF even though they had also received comprehensive insurance coverage settlements involving insurance coverage disputes for the same contaminated facilities.

105.  Defendants have made no effort to disclose to the Commonwealth their eligibility for reimbursement for environmental corrective action costs from many of their insurers.

106.  Defendants have made no effort to disclose to the Commonwealth the scope and terms of their numerous applicable insurance policies.

Case ID: 140602880

107.   Upon information and belief, Defendants signed General Releases which purport to release Defendants' insurers from all past and future claims for reimbursement of corrective action costs for environmental contamination caused by leaking USTS.

108.   Upon information and belief, Defendants and their insurers, through their Settlement Agreements and General Releases, intended to extinguish the Commonwealth's subrogation rights without the Commonwealth's knowledge or consent, and Defendants agreed to indemnify their insurers for the claims brought herein.

109.   After receipt of any payment from the USTIF, Defendants' rights against any person, including their insurers, were transferred to the USTIF pursuant to 25 Pa. Code § 977.40. However, Defendants by their numerous insurance reimbursements/settlements  and concealment of the scope and terms of their numerous applicable insurance policies have violated and breached the subrogation rights transferred to the USTIF under 25 Pa. Code § 977.40.

110.   Despite the existence and viability of numerous insurance reimbursements and insurance coverage settlements, Defendants have, at all relevant times herein:  (a) continued to submit claims to the USTIF for Pennsylvania storage tank and petroleum fuel dispensing facilities  which were  covered by insurance reimbursements and insurance coverage settlements with Defendants' insurers without disclosing to the  USTIF that they had insurance and were pursuing litigation and/or settlements with their insurers for the costs associated with environmental remediation of leaking USTS at storage tank and petroleum fuel dispensing facilities  in Pennsylvania; (b)  continued to submit claims for reimbursement from the USTIF without disclosing to the Commonwealth their existing and viable insurance policies; and

Case ID: 140602880

(c) failed, upon application to the USTIF, to report or deduct from their incurred costs the amount covered by insurance reimbursements and insurance coverage settlements.

111.  Moreover, Defendants have continued to submit claims to, and receive reimbursements from, the USTIF after they had reached comprehensive settlement agreements with many of their insurance carriers even though they had already received insurance proceeds for the same sites as part of the comprehensive settlement agreements.

112.  Defendants failed to disclose information relating to their insurance claims and litigation against their insurers in order to prevent the USTIF from asserting its statutory subrogation claims.

113.  The Commonwealth is entitled to recoup all funds which Defendants received as a result of their false and fraudulent misstatements, certifications and/or omissions and concealment of material facts relating to Defendants' insurance coverage for their contaminated facilities in the Commonwealth of Pennsylvania.

114.  Under 25 Pa Code § 977.33 (b) (3) as amended under sections 206, 506, 1501 and 1502 of The Administrative Code of 1929 (71 P. S. § § 66, 186, 411 and 412), Defendants as Fund participants are excluded from asserting any claims under the USTIF for disbursement for corrective action costs relating to any portion of a release from a USTS which occurred before February 1, 1994.

115.  As Fund participants, Defendants made claims for reimbursement to the USTIF at hundreds of their storage tank and petroleum fuel dispensing facilities in Pennsylvania. Defendants knowingly made false claims for reimbursement to the USTIF at many of their storage tank and petroleum fuel dispensing facilities where leaks and releases requiring environmental remediation occurred prior to February 1, 1994.

Case ID: 140602880

116.   As Fund participants, Defendants knowingly suppressed, omitted, concealed and failed to disclose to the Commonwealth any and all information about leaks and releases requiring environmental remediation that occurred prior to February 1, 1994. Under the rules and regulations of the USTIF, Defendants were required to provide any and all information about leaks and releases requiring environmental remediation that occurred prior to February 1, 1994 in order for the USTIF to evaluate and prorate environmental remediation corrective action costs and reimburse only those corrective action costs related to post February 1, 1994 releases.

117.   A large percentage of the claims made to the USTIF by Defendants suppressed, omitted, concealed and failed to disclose to the USTIF any and all information about leaks and releases that occurred prior to February 1, 1994. In fact, many of these Pennsylvania storage tank and petroleum fuel dispensing facilities were listed as examples of service stations and convenience stores that incurred environmental contamination related to pre-February 1, 1994 leaks and releases in Defendants' insurance claims and coverage litigation.

118.   Furthermore, Defendants replaced or repaired their USTS at many of their historic Pennsylvania facilities prior to February 1, 1994 due to USTS equipment failures. Very few if any of these USTS replacements or repairs were reported to have leaks and/or releases that occurred prior to February 1, 1994 in Defendants' applications for reimbursement to the USTIF.

119.   Defendants through USTS maintenance, repairs, replacement and leak records had strong evidence solely in their possession of pre-February 1, 1994 environmental contamination at their claimed service stations and convenience stores. Defendants used this information and documentation in support of their insurance claims and insurance coverage litigation.

Case ID: 140602880

120.  Notwithstanding, Defendants  continued to omit, conceal, obstruct, misrepresent, and deceive the USTIF by nondisclosure  of any knowledge of past leaks and releases that clearly existed prior to February 1, 1994 in their USTS maintenance, repairs, replacement and leak records.

121.  During all pertinent times, Defendants failed to cooperate in all respects with the USTIF in the investigation of all claims submitted. This failure to cooperate is based upon the following:

(a)      Defendant's omissions, concealment, suppression, misrepresentations and failure to disclose information about pre-February 1, 1994 leaks and releases from their USTS at their claimed storage tank and petroleum fuel dispensing facilities including service stations and convenience stores in Pennsylvania;

(b)       Defendant's omissions, concealment, suppression, misrepresentations and failure to disclose information about pre-February 1, 1994 leaks and releases from their USTS at their former storage tank and petroleum fuel dispensing facilities including service stations and convenience stores in Pennsylvania;

(c)      Defendant's omissions, concealment, suppression, misrepresentations and failure to disclose information about pre-February 1, 1994 leaks and releases from their USTS at their former and current storage tank and petroleum fuel dispensing facilities including service stations and convenience stores in

Case ID: 140602880

Pennsylvania that contaminated other third party properties that

received disbursements from the USTIF; and

(d)     Defendants' omissions, concealment, suppression,

misrepresentations and failure to disclose information about their

comprehensive settlements with many of their insurers in the

insurance coverage lawsuits as well as insurance reimbursements

from  private claims that resulted in Defendants collectively

receiving in excess of a billion  dollars  in order to prevent  the

USTIF from  investigating and pursuing its statutory subrogation

claims.

122.  Defendants failed to cooperate as Fund participants with the USTIF in

violation of 25 Pa Code § 977.32.

123.  Defendants failed to comply with the rules and regulations of the USTIF and

provide the USTIF with truthful and accurate information relating to pre-February 1, 1994 leaks

and releases from their USTS at their divested, previous and currently owned, operated, leased or

supplied storage tank and petroleum fuel dispensing facilities in Pennsylvania.

124.  Defendants' alleged conduct and other such activities violates the Act, 35

P.S. §§ 6021.101 et seq., and 25 Pa Code §§ 977.1 et seq. and has caused, and continues to

cause, injury and damage to the Commonwealth.

125.  Defendants' actions, inactions, omissions, concealment, suppression,

misrepresentations, nondisclosure and fraudulent conduct in providing false information about

their past history of leaks and/or releases regarding their claimed and divested service stations

and convenience stores obstructed the USTIF in its investigation into determining past history of

Case ID: 140602880

leaks and/or releases at their storage tank and petroleum fuel dispensing facilities  in Pennsylvania.

126.  The Plaintiffs have multiple claims against Defendants which are primarily based upon Defendants' fraudulent and deceptive acts, concealment, suppression of information, nondisclosure and omissions in connection with their procurement and use of certain public-benefit funds which they improperly accessed through the USTIF.

127.  The Commonwealth brings this multi-count complaint seeking redress for Defendants' violations of Pennsylvania statutory and common law.

**COUNT I**
**(Against All Defendants)**
**<u>SUBROGATION RIGHTS</u>**

128.  The Commonwealth incorporates each of the preceding paragraphs as if fully set forth herein at length.

129.  25 Pa. Code § 977.40 states, in pertinent part: "(a) The Fund, after any payment, shall be subrogated to all of the rights of recovery of an owner or operator against any person for the costs of remediation."

130.  In addition to statutory subrogation, Pennsylvania also recognizes the common law right of subrogation.  See e.g., *Thompson v. Workers' Compensation Appeal Board*, 781 A.2d 1146 (Pa., 2001).

131.  As Fund participants, Defendants submitted claims to the USTIF either before, concurrently or after asserting their rights to have these same claims paid by their insurance carriers for the same environmental liability.  Defendants similarly asserted their rights against their insurance carriers by initiating litigation or through informal claim proceedings without disclosing this information to the Commonwealth.

Case ID: 140602880

132.  Defendants' environmental pollution claims against their insurers for all past, present, or future environmental pollution at their Pennsylvania storage tank and petroleum fuel dispensing facilities have been paid by many of their insurers through settlements and insurance reimbursements.

133.  At the same time, Defendants' applications for corrective action payments with the USTIF have either: (a) been paid; or (b) are currently awaiting clean-up and payment.

134.  At no time have Defendants reimbursed the USTIF any of the amounts they have received in settlement from their insurance carriers.

135.  At no time did Defendants disclose to the Commonwealth that they had insurance coverage for corrective actions required by the Act.  Likewise, Defendants never disclosed to the Commonwealth that they were pursuing, and settling, coverage claims with the insurers.

136.  Defendants failed to abide by the subrogation for corrective action cost requirements of the regulations underlying the Act (25 Pa. Code § 977.40) by:

      a.     Failing to disclose to  the Commonwealth that they had insurance policies that provided, or could have provided, insurance coverage for corrective actions;

      b.     Failing to disclose to  the Commonwealth that they were settling with their insurers and releasing all insurance policies that provided, or could have provided, coverage for corrective action costs;

      c.     Failing to protect the subrogation rights of the Commonwealth;

Case ID: 140602880

d.      Failing to comply with 25 Pa. Code § 977.32

relating to participant cooperation.

137.  By failing to abide by the subrogation for corrective action cost

requirements of the regulations underlying the Act (25 Pa. Code § 977.40), the Commonwealth

has suffered damages in that the Defendants prevented the Commonwealth from asserting its

subrogation rights to recover corrective action costs paid by the USTIF against Defendants'

mutual, captive and commercial insurers.

138.  Because Defendants settled with their insurers for corrective action costs,

and released all insurance policies that provided, or could have provided, coverage for corrective

action costs, the Commonwealth is entitled to reimbursement of all corrective action costs paid

to Defendants by the USTIF.

WHEREFORE, the Commonwealth demands judgment in its favor against the Defendants in an

amount in excess of the arbitration limits and including prejudgment interest, punitive damages

where appropriate and all other relief, at law or equity, the Court deems just and proper.


**COUNT II**
**(Against All Defendants)**
**<u>SUBROGATION</u>**

139.  The Commonwealth incorporates each of the preceding paragraphs as if

fully set forth herein at length.

140.  25 Pa. Code § 977.40 states, in pertinent part: "(a) The Fund, after any

payment, shall be subrogated to all of the rights of recovery of an owner or operator against any

person for the costs of remediation."

Case ID: 140602880

141.  In addition to statutory subrogation, Pennsylvania also recognizes the common law right of subrogation.  See e.g., *Thompson v. Workers' Compensation Appeal Board*, 781 A.2d 1146 (Pa., 2001).

142.  As Fund Participants, Defendants made a large number of claims to the USTIF in which Defendants failed to disclose and concealed company records relating to their facilities having a history of leaks and releases that were discovered and occurred before February 1, 1994. A significant percentage of the claims made to the USTIF by Defendants suppressed, omitted, concealed, mislead, falsified, misrepresented and failed to disclose to the USTIF any and all information about leaks and releases that were discovered and occurred prior to February 1, 1994.

143.  Defendants' actions, inactions, omissions, suppression, concealment, non-disclosure, misrepresentations and fraudulent conduct concerning their history of pre- February 1, 1994 leaks and/or releases mislead and obstructed the USTIF. These acts or omissions of a false, fraudulent, or misleading nature were undertaken in furtherance of obtaining funding/reimbursement in violation of the rules and regulations of the USTIF.

144.  Under 25 Pa Code § 977.33 (b) (3) as amended under sections 206, 506, 1501 and 1502 of The Administrative Code of 1929 (71 P. S. § § 66, 186, 411 and 412), Defendants as Fund participants are excluded from asserting any claims under the USTIF for disbursement for corrective actions costs relating to any portion of a release from a USTS which occurred before February 1, 1994.

145.  The USTIF has made and will continue to make disbursements for corrective action and environmental remediation costs as well as bodily injury and property damages to eligible third party participants for remediation at Defendants former storage tank

Case ID: 140602880

and petroleum fuel dispensing facilities and third party properties in Pennsylvania that was caused by the actions and/or inactions of Defendant.

146. The USTIF has obtained the right of subrogation from these eligible third party participants. Under 25 Pa Code § 977.40, the USTIF shall be "subrogated to all the rights of recovery of an owner or operator against any person for the costs of remediation."

147. The USTIF required eligible third party participants to provide truthful and complete information about leaks and releases from USTS that occurred before February 1, 1994.

148. The eligible third party participants that had acquired former storage tank and petroleum fuel dispensing facilities primarily gasoline stations and convenience stores from Defendants assigned their subrogation rights to the USTIF. The eligible third party participants when they purchased their storage tank and petroleum fuel dispensing facilities from Defendants were never truthfully informed by Defendants about pre- February 1, 1994 leaks and releases at these storage tank and petroleum fuel dispensing facilities in Pennsylvania.

149. The USTIF has made and will continue to make reimbursements for corrective action and environmental remediation costs to eligible third party participants whose properties have been contaminated by the action, inactions, omissions, concealment, negligence and fraudulent conduct of Defendants at adjacent third party properties and their former storage tank and petroleum fuel dispensing facilities in Pennsylvania.

150. Defendants suppressed, omitted, failed to disclose and concealed any and all information about pre- February 1, 1994 leaks and releases caused by Defendants that exists at their former storage tank and petroleum fuel dispensing facilities in Pennsylvania.

Case ID: 140602880

151.  Defendants suppressed, omitted, failed to disclose and concealed any and all information about insurance reimbursements and insurance settlements for pre-acquisition leaks and releases caused by Defendants that exists at their former storage tank and petroleum fuel dispensing facilities.

152.  The USTIF has the right to recover against Defendants' for the corrective action and environmental remediation costs paid to third-party participants for environmental contamination caused by Defendants at their former storage tank and petroleum fuel dispensing facilities or adjacent third-party properties.

153.  Statutory and Common Law Subrogation applies against Defendants and the USTIF is (a) entitled to be refunded the monies paid to third party participants for reimbursement of environmental remediation corrective action costs against Defendants for their environmental pollution that exists at their former storage tank and petroleum fuel dispensing facilities or third-party properties in Pennsylvania; and (b) entitled to be refunded the monies paid to Defendants for their environmental pollution that exists at their storage tank and petroleum fuel dispensing facilities or third-party properties in Pennsylvania.

154.  The USTIF is entitled to be refunded the monies paid to third party participants for reimbursement of environmental remediation corrective action costs against Defendants for their environmental pollution that exists at their former owned, operated, leased and/or supplied storage tank facilities or third-party properties in Pennsylvania.

WHEREFORE, the Commonwealth demands judgment in its favor against the Defendants in an amount in excess of the arbitration limits and including prejudgment interest, punitive damages where appropriate and all other relief, at law or equity, the Court deems just and proper.

Case ID: 140602880

**COUNT III**
**(Against All Defendants)**
<u>**UNJUST ENRICHMENT**</u>

155.  The Commonwealth incorporates each of the preceding paragraphs as if fully set forth herein at length.

156.  Under Pennsylvania law, it is well established that a person who has been unjustly enriched at the expense of another must make restitution to the other. *Binns v. First National Bank of California, Pennsylvania,* 80 A.2d 768 (Pa. 1951); *DeGasperi v. Valicenti*, 181 A.2d 862 (Pa. Super., 1962).

157.  Where unjust enrichment is found, the law implies a contract, which requires the defendant to pay to the plaintiff the value of the benefit conferred. *Schenck v. K.E. David, Ltd.*, 666 A.2d 327 (Pa. Super., 1995).

158.  At all times relevant hereto, Defendants received benefits from the Commonwealth in the form of payments from the USTIF to cover corrective action costs.

159.  Defendants had knowledge of the benefit being conferred upon them by the Commonwealth.

160.  At the same time Defendants were accepting benefits from the Commonwealth in the form of payments from the USTIF, Defendants were also pursuing claims against their various insurers to recover the very same corrective action costs covered by the USTIF.

161.  At various times relevant hereto, Defendants entered into settlement agreements with their insurers and accepted payments which were, at least in part, payments for the very same corrective action costs covered by the USTIF payments.

Case ID: 140602880

162.  Defendants have been unjustly enriched by their acceptance of benefits from the Commonwealth in the form of payments from the USTIF to cover corrective action costs and also receiving settlement payments from their insurers for those same corrective action costs.

163.  As a result of the unjust enrichment, Defendants must pay the Commonwealth the full value of the benefit conferred in the form of payments from the USTIF for corrective action.

WHEREFORE, the Commonwealth demands judgment in its favor against the Defendants in an amount in excess of the arbitration limits and including prejudgment interest, punitive damages where appropriate and all other relief, at law or equity, the Court deems just and proper.

## COUNT IV
### (Against All Defendants)
### NEGLIGENT MISREPRESENTATION

164.  The Commonwealth incorporates each of the preceding paragraphs as if fully set forth herein at length.

165.  Defendants had a statutory duty to comply with all the requirements of the Act, especially the rules and regulation relating to the USTIF.

166.  Defendants were ineligible to receive reimbursement from the USTIF for pre-February 1994 environmental contamination because the Act specifically excludes "any portion of a release which occurred before February 1, 1994."  25 Pa.Code § 977.33(b)(3).

167.  Defendants had a duty to cooperate and disclose to USTIF that many if not all of their claimed storage tank and petroleum fuel dispensing facilities in Pennsylvania had pre-February 1, 1994 leaks and releases that caused substantial environmental damage requiring remediation. Such damage and contamination posed a significant threat to Pennsylvania's ability to carry out its vital function of protecting the public's health, safety, and welfare.

Case ID: 140602880

168.  Defendants negligently misrepresented, suppressed, concealed, failed to disclose and omitted information that they had pre-February 1, 1994 leaks and releases at their claimed storage tank and petroleum fuel dispensing facilities primarily service stations and convenience stores in Pennsylvania in order to mislead and induce the USTIF into reimbursing Defendants for complete remediation and site corrective action costs that included costs to remediate pre- February 1, 1994 leaks and releases.

169.  Defendants negligently misrepresented, suppressed, concealed, failed to disclose and omitted information that they had pre-February 1, 1994 at their storage tank and petroleum fuel dispensing facilities in Pennsylvania was intended to mislead the USTIF into relying on their misrepresentation, suppression, concealment and omission of information.

170.  Defendants negligently misrepresented, suppressed, concealed, failed to disclose and omitted information about their insurance from the USTIF in order to induce the USTIF to forego its right to pursue subrogation claims against the Defendants:

(a)      That Defendants had multiple insurance policies through commercial, mutual and captive insurers that provided insurance for the investigation and remediation of petroleum contamination at their Pennsylvania storage tank and petroleum fuel dispensing facilities.;

(b)      That Defendants had multiple insurance policies, including garage-liability policies, comprehensive general-liability policies, property-damage policies, all-risk policies and pollution-liability policies to cover both the third-party dealer/operator and Defendants (*i.e.*, additional insured) for corrective action

Case ID: 140602880

environmental remediation costs for their storage tank and

petroleum fuel dispensing facilities in Pennsylvania;

(c)     That Defendants had filed insurance coverage

claims and lawsuits against many of their insurers which provided

insurance for the investigation and remediation of environmental

contamination caused by leaking USTS at storage tank and

petroleum fuel dispensing facilities throughout Pennsylvania; and

(d)     That Defendants had receveid reimbursements

collectively in excess of a billion dollars in insurance

reimbursements and insurance coverage settlements from many of

their insurers which would include remediation corrective action

costs for petroleum contamination at Defendants' former and

current storage tank and petroleum fuel dispensing facilities in

Pennsylvania.


171.  Defendants negligently misrepresented, suppressed, concealed, failed to

disclose and omitted the above insurance information from USTIF to remain eligible for

reimbursements from the USTIF for their corrective action costs and to prevent the USTIF from

investigating and pursuing its subrogation rights.

172.  Defendants intended or had reason to expect that the USTIF would  act upon

their negligently misrepresented, suppressed, concealed, failed to disclose and omitted

information and reimburse Defendants and pay third-party contractors on Defendants' behalf.

Case ID: 140602880

173.  The USTIF justifiably relied upon Defendants' negligently misrepresented, suppressed, concealed, failed to disclose and omitted information to the USTIF's detriment by reimbursing Defendants or paying third-party contractors on Defendants' behalf when Defendants were not entitled because of their breach and violation of the rules and regulations of the USTIF.

174.  Based upon the allegations as set forth above, the Commonwealth seeks to pursue its actionable claims for recovery of all monies paid by the USTIF to Defendants and third party  participants to remediate  environmental  contamination at storage tank and petroleum fuel dispensing facilities currently or formerly owned, operated, leased, distributed or supplied by Defendants.

WHEREFORE, the Commonwealth demands judgment in its favor against the Defendants in an amount in excess of the arbitration limits and including prejudgment interest, punitive damages where appropriate and all other relief, at law or equity, the Court deems just and proper.

### COUNT V
### (Against All Defendants)
### FRAUDULENT CONCEALMENT & NONDISCLOSURE

175.  The Commonwealth incorporates each of the preceding paragraphs as if fully set forth herein at length.

176.  Defendants had a duty to cooperate and disclose to the USTIF that many if not all of their claimed storage tank and petroleum fuel dispensing facilities in Pennsylvania had pre- February 1, 1994 leaks and releases that caused substantial environmental damage requiring remediation.

177.  Defendants intentionally misrepresented, suppressed, concealed, failed to disclose and omitted information that they had pre- February 1, 1994 leaks and releases at their

Case ID: 140602880

claimed storage tank and petroleum fuel dispensing facilities in Pennsylvania in order for the USTIF to reimburse Defendants for complete site corrective action costs that included costs to remediate pre- February 1, 1994 leaks and releases.

178.   Defendants intentionally misrepresented, suppressed, concealed, failed to disclose and omitted information that they had pre- February 1, 1994 leaks and releases at their former storage tank and petroleum fuel dispensing facilities in Pennsylvania in order for the USTIF to forego its right to pursue subrogation claims against the Defendants for complete site corrective action costs that included costs to remediate pre- February 1, 1994 leaks and releases.

179.   Defendants intentionally misrepresented, suppressed, concealed, failed to disclose and omitted information that they had pre- February 1, 1994 leaks and releases at their storage tank and petroleum fuel dispensing facilities in Pennsylvania that contaminated adjacent third party properties in order for the USTIF to forego its right to pursue subrogation claims against the Defendants for complete site corrective action costs that included costs to remediate pre- February 1, 1994 leaks and releases.

180.   Defendants intentionally misrepresented, suppressed, concealed, failed to disclose and omitted the following material information about their insurance from the USTIF in order for the USTIF to forego its right to pursue subrogation claims against the Defendants:

   (a)  That Defendants' had multiple insurance policies through commercial, mutual and captive insurers that provided insurance for the investigation and remediation of petroleum contamination at their Pennsylvania storage tank and petroleum fuel dispensing facilities;

Case ID: 140602880

(b)      That Defendants' had multiple insurance policies, including garage-liability policies, comprehensive general-liability policies, property-damage policies, all-risk policies and pollution-liability policies to cover both the third-party dealer/operator and Defendants (*i.e.*, additional insured) for corrective action environmental remediation costs for their storage tank and petroleum fuel dispensing facilities in Pennsylvania;

(c)      That Defendants' had filed insurance coverage claims and lawsuits against many of their insurers which provided insurance for the investigation and remediation of environmental contamination caused by leaking USTS at storage tank and petroleum fuel dispensing facilities throughout Pennsylvania; and

(d)      That Defendants' had received reimbursements collectively in excess of a billion dollars in insurance reimbursements and insurance coverage settlements from many of their insurers which would include remediation corrective action costs for petroleum contamination at Defendants former and current storage tank and petroleum fuel dispensing facilities in Pennsylvania.

181.  Defendants intentionally, knowingly and wantonly misrepresented, suppressed, concealed, failed to disclose and omitted information that their insurance reimbursements and insurance coverage settlements covered all of their historic storage tank and petroleum fuel dispensing facilities in Pennsylvania up to the date of the settlement agreement

Case ID: 140602880

and insurance reimbursement. This would include all divested storage tank and petroleum fuel dispensing facilities to which the USTIF reimbursed third party participants.

182. Defendants intentionally, knowingly and wantonly misrepresented, suppressed, concealed and failed to disclose the above information from the USTIF to remain eligible for reimbursements from the USTIF for their corrective action costs.

183. Defendants intentionally, knowingly and wantonly misrepresented, suppressed, concealed, failed to disclose and omitted the above information from the USTIF and third party participants in order to prevent the USTIF from investigating and pursuing its subrogation rights for Defendants former and current storage tank and petroleum fuel dispensing facilities.

184. Defendants intended or had reason to expect that the USTIF would act upon Defendants intentional misrepresentations, concealment, omissions, failure to disclose and suppression of information in order to be reimbursed by the USTIF.

185. The USTIF justifiably relied upon Defendants fraudulent concealment, omissions, intentional misrepresentations, failure to disclose and suppression of information to its detriment by reimbursing Defendants when Defendants were not entitled because of their violation of the rules and regulations of the USTIF.

186. Based upon the fraudulent concealment, nondisclosure and intentional misrepresentation of material facts as set forth above, the Commonwealth seeks to pursue its actionable claims for recovery of all monies paid by the USTIF to Defendant and third parties to remediate environmental contamination at storage tank and petroleum fuel dispensing facilities as well as adjacent properties in Pennsylvania.

Case ID: 140602880

WHEREFORE, the Commonwealth demands judgment in its favor against the Defendants in an amount in excess of the arbitration limits and including prejudgment interest, punitive damages where appropriate and all other relief, at law or equity, the Court deems just and proper.

### COUNT VI
### (Against All Defendants)
### <u>VIOLATION OF STORAGE TANK AND SPILL PREVENTION ACT</u>

187.  The Commonwealth incorporates each of the preceding paragraphs as if fully set forth herein at length.

188.  At all times relevant hereto, Defendants were required to abide by the Act, as well as all regulations promulgated in accordance with the Act, see, e.g., 25 Pa. Code §§ 245.1, et seq. and 25 Pa. Code §§ 977.1, et seq.

189.  25 Pa. Code § 977.31 Eligibility Requirements states, in pertinent part:

> To be eligible for Fund coverage, the participant shall, under section 706 of the act (35 P.S. § 6021.706), meet the following eligibility requirements: . . .
> (5)  The release that is the subject of the claim occurred after the date established by the Board for payment of the fee required by section 705(d) of the act.
> (6)  The participant cooperates, as defined in § 977.32 (relating to participant cooperation), with the Fund in its eligibility determination process, claims investigation, the defense of any suit, the pursuit of a subrogation action and other matters as requested.

190.   25 Pa. Code § 977.32 Participant Cooperation states:

> (a)  At a minimum, the participant shall cooperate by:
>
> (1)  Providing all information requested by the Fund including tank system design documents, inventory records, tank tightness test results, contracts and other information pertinent to a claim within 30 days of the request of the Fund, or additional time as set by the Fund.
>
> (2)  Permitting the Fund or its agent to inspect, sample and monitor on a continuing basis the property or operation of the participant.

Case ID: 140602880

(3)  Providing access to interview employees, agents, representatives or independent contractors of the participant; and to review any documents within the possession, custody or control of the participant concerning the claim.

(4)  Submitting, and requiring employees, consultants and other interested parties subject to its control to submit, to an examination under oath upon the request of the Fund.

(5)  Obtaining competitive proposals for work to be performed when requested by the Fund.

(b)  The participant shall cooperate in all respects with the Fund, its investigators, attorneys and agents during the investigation and resolution of a claim, including the defense of a suit, as provided in § 977.35 (relating to third-party suit) and any subrogation action as provided in § 977.40 (relating to subrogation for corrective action cost).

(c)  Lack of cooperation by the participant with the Fund or its investigators, attorneys, or agents may result in denial of the claim or cessation of further payments on a claim.

191.  At all times relevant hereto, Defendants failed to meet the eligibility requirements of the Fund by:

(a)     Submitting claims for releases that occurred before February 1, 1994 in violation of 25 Pa. Code § 977.33(b)(3);

(b)     Failure to disclose  inventory records, maintenance records, company leak reports and USTS equipment repair and replacement records that would establish the dates of USTS releases;

(c)     Failure to protect the Commonwealth's subrogation rights by entering into settlement agreements and releasing insurance policies that provided coverage for the investigation and

Case ID: 140602880

remediation of environmental contamination caused by leaking

USTS.

192.  As a result of Defendants' failure to meet the eligibility requirements of the

Fund, the Commonwealth is entitled to recover all payments made to Defendants by the Fund

and to cease payment of further payments on any claim filed by Defendants.

WHEREFORE, the Commonwealth demands judgment in its favor against the

Defendants in an amount in excess of the arbitration limits and including prejudgment interest,

punitive damages where appropriate and all other relief, at law or equity, the Court deems just

and proper.

**KATHLEEN G. KANE**
**ATTORNEY GENERAL**

By: */s  James A. Donahue*
James A. Donahue, III
Executive Deputy Attorney General
PA Bar # 42624
jdonahue@attoreneygeneral.gov
Office of Attorney General
Public Protection Division
14th Floor
Strawberry Square
Harrisburg, PA 17120
Tel:  (717) 787-4530

**JAMES D. SCHULTZ**
**GENERAL COUNSEL**

By: */s  Linda C. Barrett*
Linda C. Barrett, Esquire
Senior Deputy General Counsel
Pa. Bar No. 46543
lbarrett@pa.gov
Governor's Office of General Counsel
333 Market Street, 17th Floor
Harrisburg, Pennsylvania  17101
Tel:  (717) 787-9347

**STARK & STARK, P.C.**

By: */s  Stephen A. Corr*
Stephen A. Corr, Esquire
Special Counsel to the
Commonwealth of Pennsylvania
Pa. Bar No. 65266
scorr@stark-stark.com
777 Township Line Road, Suite 120
Yardley, PA  19067
Tel:  (267) 907-9600

Case ID: 140602880

To be Admitted *Pro Hac Vice*

Dennis G. Pantazis, Esquire
**WIGGINS CHILDS QUINN & PANTAZIS**
Special Counsel to the
Commonwealth of Pennsylvania
The Kress Building
301 19th Street North
Birmingham, AL  35203
Tel:  (205) 314-0500

Case ID: 140602880

## VERIFICATION

I, Richard Burgan, hereby verify that the facts set forth in the foregoing Complaint are true and correct to the best of my information, knowledge and belief, and that false statements herein are made subject to the penalties of 18 Pa. C.S. Sec. 4904, relating to unsworn falsification to authorities.

Richard Burgan

Claims Manager for the PA
Underground Storage Tank
Indemnification Fund

DATED: 6-19-14

55

Case ID: 140602880